UNITED STATES OF AMERICA

WORCESTER, SS.                          U.S. DISTRICT COURT
                                        DISTRICT OF MASSACHUSETTS
                                        Civil Action No. 05-40154 FDS

_____
JOSE HERRERA BETANCOURT                 )
      Plaintiff                         )
                                        )
v.                                      )
                                        )
JOHN J. GRADY, MICHAEL FOLEY,           )
PAUL KEYES, THE CITY OF                 )
WORCESTER - A MUNICIPAL                 )
CORPORATION, KEVIN FIFIELD,             )
U.S. SECURITY ASSOCIATES, INC.,         )
WINN MANAGED PROPERTIES LLC             )
      Defendants                        )
_____)

## FIRST AMENDED COMPLAINT AND REQUEST FOR JURY TRIAL

## INTRODUCTION

1.    This is an action for money damages against the City of Worcester, and Worcester Police
      Officers John Grady, Michael Foley, Paul Keyes, and security officer Kevin Fifield for
      violations of the plaintiff's constitutional rights and for other state torts. The plaintiff has
      additional claims against various corporate defendants alleging a variety of torts.

## JURISDICTION

2.    This action is brought pursuant to 42 U.S.C. §§ 1983, and 1988, and the Fourth and
      Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon
      28 U.S.C. §§ 1331 and 1343 and 28 U.S.C. §§ 1367 provides supplemental jurisdiction
      over the state law claims.

## PARTIES

3.    Plaintiff, Jose Herrera Betancourt, ("Herrera Betancourt") is and was at all material times
      herein a citizen of the United States and a resident of Putnam, Connecticut.

4.    Defendant, The City of Worcester is a duly organized municipal corporation under the
      laws of the Commonwealth of Massachusetts, located in Worcester County.  The
      Worcester Police Department ("WPD") was at all times relevant to this complaint a
      department of the City of Worcester.

5.    Defendant John J. Grady ("Grady") was at all times material to this complaint employed by the WPD and acting under color of state law. He is being sued in his individual capacity. He has a residential address located at 21 Aroostook Street, Worcester, Worcester County, Massachusetts.

6.    Defendant Michael Foley ("Foley") was at all times material to this complaint employed by the WPD and acting under color of state law. He had a business address of 9 – 11 Lincoln Street, Worcester, Worcester County, Massachusetts.  He is being sued in his individual capacity.

7.    Defendant Paul Keyes ("Keyes") was at all times material to this complaint employed by the WPD and acting under color of state law. He is being sued in his individual capacity.

8.    Defendant Kevin V. Fifield ("Fifield") was at all times material to this complaint a law enforcement officer acting under color of state law. In addition he was employed by U.S. Security Associates, Inc., and/or Winn Managed Properties LLC and was acting within the scope of his employment, and had a business address of 718 Main Street, Worcester, Worcester County, Massachusetts.  At all times pertinent hereto Fifield was acting in conjunction with the police and within in the scope of his employment.

9.    Defendant US Security Associates, Inc. ("US Security") is a private foreign corporation doing business in Massachusetts but with a usual place of business abode located at 200 Manswell Court, Suite 500, Roswell, GA 30076.

10.    Defendant Winn Managed Properties LLC ("Winn") is a foreign limited liability company with a usual place of business abode in Massachusetts at 6 Faneuil Hall MarketPlace, Boston, Suffolk County, Massachusetts.

11.    At all times mentioned herein: Grady, Foley, Keyes, and Fifield, were acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usage of the Commonwealth of Massachusetts and/or the City of Worcester.

## FACTS

12.    On September 8, 2002, Herrera Betancourt was staying with his sister who was a tenant 718 Main Street, # 303, Worcester, Worcester County, Massachusetts a property owned by The Wellington Company, Inc. a domestic limited partnership with an address at 4 Faneuil Hall Loft area, Boston, Suffolk County, MA 02109, or by the Matheson Apartments, Inc., a domestic non profit with a usual place of business abode located at 6 Faneuil Hall Mkt. Boston, MA 02109.

13.    At all times material to this complaint the apartment complex and the common areas located at 718 Main Street, Worcester, Worcester County, Massachusetts (either owned by the Matheson Apartments, Inc., ("Matheson Apartments") or by The Wellington Company ("Wellington")) were managed and controlled by defendant Winn on behalf of either Matheson Apartments or Wellington.

2

14.     At all times material to this complaint defendant US Security had entered a contract to provide police and security services at 718 Main Street, Worcester, Worcester County, Massachusetts with defendant Winn.

15.     On September 8, 2002, Herrera Betancourt went to the private parking lot located at 718 Main Street to listen to music on his sister's car.

16.     The parking area where Herrera Betancourt went to was under the control of defendants Winn and US Security.

17.     The car was parked improperly (i.e., straddling two designated parking spaces) and Herrera Betancourt backed the car in order to park it correctly within the designated parking boundaries.

18.     As he backed the vehicle Herrera Betancourt noticed various officers approaching him and trying to get his attention either by signaling to him and/or by saying, "Hey you."

19.     The defendant Grady, one of the aforesaid officers that Herrera Betancourt noticed, was working a private paid detail for Winn. Grady was wearing his WPD uniform, and badge and had his department issued gun, and he was exercising his powers as a Worcester Police officer.

20.     Defendant Fifield, another of the officers that Betancourt Herrera noticed, was working a private paid detail for Winn and/or US Security.  He was wearing a police uniform and badge and had a gun, and he was exercising his powers as a Police officer.

21.     Defendant Foley was one of the officers that police records reflect was present at the aforesaid time and place and he was working for the WPD and/or a detail for the Worcester Housing Authority. He was wearing his WPD uniform and badge and had a department issued gun, and he was exercising his powers as a Worcester Police officer.

22.     When Herrera Betancourt noticed the officers his attention shifted to them and the vehicle he was backing bumped into a vehicle behind him causing property damage onto his sister's vehicle only.

23.     Immediately after the impact Herrera Betancourt got out of the car to assess damage to the vehicles. Foley ran towards him with the two other officers and asked for identification.

24.     Herrera Betancourt provided one of the officers them with his identification and advised them that he was staying with his sister Fanny Herrera Betancourt at 718 Main Street Apt. 303, Worcester, Massachusetts.

25.     Defendant Fifield knew and had seen Herrera Betancourt at 718 Main Street before the incident.

26.    Fifield knew at the time of the incident that Herrera Betancourt was staying with his sister at 718 Main Street, Worcester, MA.

27.    Herrera Betancourt was not told he was under arrest nor told that he should not move the car.

28.    While the officers checked the information, Herrera Betancourt got back on the car and tried to move the car back into its proper parking spot.

29.    When Herrera Betancourt got back on the front of the car was facing towards Murray Avenue in Worcester, Massachusetts.

30.    As he did this two officers opened the driver's door and another officer opened the passenger door.

31.    Fifield entered the vehicle from one side and removed the keys from the ignition and Foley and Grady removed Herrera Betancourt from the vehicle through the driver's door.

32.    Foley and Grady dragged Herrera Betancourt out of the car they put his hands behind his back, applying excessive force to and twisting his arms and wrists, and then slammed him face down to the pavement.

33.    Immediately thereafter, as Herrera Betancourt lay unresisting on the ground and was helpless with his arms pinned behind his back, he was repeatedly and violently punched, kicked and stomped in his upper and mid back, forehead, face, nose, neck and shoulders.

34.    Foley then handcuffed Herrera Betancourt and while doing so deliberately twisted Herrera Betancourt's left thumb into an unnatural position, fracturing it and causing excruciating pain.

35.    After being handcuffed Herrera Betancourt lay prone with his face on the pavement.

36.    Defendant Foley then stepped on Herrera Betancourt's head with his boot and ground Herrera Betancourt's head into the pavement and subsequently when Herrera Betancourt tried to look up he was kicked in the head and forehead and told to "put you're fucking head down."

37.    Foley repeatedly pressed Herrera Betancourt's face into the pavement with his shod foot so as to injure and cause pain to the plaintiff.

38.    At some point in time after Herrera Betancourt was dragged out of the of the car and lay prone face down with his right cheek against the pavement, defendant Grady pulled his service revolver and pointed it directly at Herrera Betancourt's head.

39.   At the time that Grady aimed his revolver at Herrera Betancourt's head, the plaintiff had been fully restrained and handcuffed, was in custody, was not resisting or attempting to resist and posed no threat of injury to any person.

40.   Foley repeatedly referred to him as "fucking Spanish" and kept hitting him.

41.   Herrera Betancourt was hurt and was visibly bleeding from the face and ears.

42.   The WPD wagon arrived and Herrera Betancourt was placed in the wagon.

43.   Herrera Betancourt's sister was awakened by police and saw the plaintiff while inside the WPD wagon and awaiting transport.

44.   A WPD officer opened the doors of the wagon in the presence of the plaintiff's sister, and at that time she noticed her brother's face was covered in blood.

45.   At that time Betancourt Herrera heard his sister asking officers if they had hurt her brother.

46.   Betancourt Herrera heard officers respond by telling his sister that that they had not hurt Betancourt Herrera, but instead that he had "fallen."

47.   When the doors to the wagon were opened as aforesaid Herrera Betancourt noticed that his sister's car had been moved from the last position he saw it –the front facing Murray Avenue.

48.   Herrera Betancourt observed the front of the car facing the parking lot entrance on Wellington Street.

49.   The defendants Foley, Grady and Fifield, acting jointly and in concert, conspired and moved the car from its original terminal position (i.e., facing Murray Avenue) into such a position as to "sanitize" the scene of the incident and to support a false accusation that Herrera Betancourt had tried to run them over with the car as they approached from Wellington Street.

50.   Defendants individually and/or in concert moved the car approximately six (6) or eight (8) parking spaces in order to falsely and maliciously charge Herrera Betancourt with three counts of assault with a dangerous weapon.

51.   Defendants Grady, Foley and Fifield did not call an ambulance to bring medical assistance to Herrera Betancourt, who had visible injuries as a result of his encounter with them.

52.   Grady used a special police radio channel, not subject to tape recording on the WPD "turret tape" system, to contact his immediate supervisor, Lt. R. Krasinskas, who then came to the scene of the incident.

53.  After his arrest Betancourt Herrera Betancourt was transported to the WPD service division or lock up unit to be booked and processed on three counts of assault with a dangerous weapon.

54.  During the booking at the WPD, Herrera Betancourt was visibly injured in the booking room and bleeding from his face and ears.

55.  The booking officer at the WPD lockup unit, defendant Paul Keyes ("Keyes"), asked Herrera Betancourt: "How you'd receive those injuries?"  "You're sick or injured?"  "How that happened?"

56.  Herrera Betancourt in response to Keyes' question, "How that happen?" replied by pointing towards his side and saying: "This guy, you know."

57.  Immediately after that response Herrera Betancourt in further response to Keyes' questioning told Keyes: "Wow, my finger. See this?"

58.  Another officer in the booking room, Officer S. Pignataro, told Keyes Herrera Betancourt was injured.

59.  Keyes had a duty to insure that all injured prisoners in need of medical attention, including Herrera Betancourt, received prompt and appropriate medical attention.

60.  Neither Keyes nor any other officer of the WPD who came in contact with Herrera Betancourt made any effort to further investigate the cause of his injuries although they knew he was injured.

61.  Before taking Herrera Betancourt's mug shot, Defendant Keyes and another WPD officer in the booking room ordered Herrera Betancourt to wipe the blood from his face with a wet paper towel.

62.  Herrera Betancourt's appearance immediately after he cleaned the blood from his face at the police station, and his appearance shortly after treatment of his fractured thumb were as follows: *See* **Exhibit 1** to original complaint**,** police mug shot and three photos taken on or about September 13, 2002.

63.  Herrera Betancourt complained about his injuries to Keyes and to another officer in the service division of the WPD and requested medical attention.

64.  Keyes was deliberately indifferent to Herrera Betancourt's medical needs and denied access to medical care until approximately four hours later.

65.  At the WPD, Herrera Betancourt was booked and charged with three counts of assault with a dangerous weapon.

66.     Herrera Betancourt was brought by the WPD personnel on September 8, 2002 to UMass Memorial Medical Center for treatment of his injuries.

67.     At the emergency room Herrera Betancourt alleged to the emergency room doctor he had been assaulted during his arrest (i.e., "police assaulted him," and "cops beat me up.").

68.     A CT scan done at UMass Memorial Medical Center showed a superficial soft tissue hematoma over the right frontal bone and beneath that in the frontal region there was a tiny adjacent subdural hematoma. i.e., bleeding inside of Herrera Betancourt's brain.

69.     Herrera Betancourt also complained of injuries to his pelvis, his lumbar and thoracic spine, and his knee, chest, patella, head, headaches, dizziness, nausea and vomiting.

70.     During the plaintiff's emergency room visit on September 8, 2002, UMass Memorial Medical Center physicians found a large 3 cm contusion above the right eyebrow, contusions to the right cheek, a 1 cm. laceration on the lip, contusions on the nose and multiple lines of excoriation in the left side of the neck.

71.     Herrera Betancourt returned to hospital days later because of continued complaints and was further diagnosed with a left thumb metacarpal base fracture which had to be surgically treated on September 18, 2002 with closed reduction, i.e., pinning and splinting the thumb and placing the hand and forearm in a cast.

72.     At all times material to this complaint Winn and/or U.S Security and/or Fifield owned, possessed, used or controlled a sophisticated video surveillance camera connected to a recording system.  The camera was located at a property on Wellington Street on a building controlled by Winn, and the camera and video system provided recorded surveillance evidence, in whole or in part, of the September 8, 2002, incident from which this matter and the criminal charges against Herrera Betancourt arose.

73.     Counsel for the plaintiff requested that this videotape recorded evidence be preserved.

74.     Defendant Fifield had access to the aforesaid videotape recording.

75.     Upon information and belief the videotape possessed exculpatory evidence as to the criminal charges against Herrera Betancourt because it would have shown that that he was cooperative and never assaulted Grady, Foley or Fifield.

76.     Furthermore, the videotape would have conclusively shown that the three defendants assaulted Herrera Betancourt and "doctored" the scene of the incident by moving and re-positioning the vehicle in a suggestive manner in an effort to hide and justify their misconduct.

77.     Immediately after Herrera Betancourt's arrest the video that would have shown portions of the parking lot where Herrera Betancourt encountered the officers were mysteriously erased from the videotape.

78.    The tampering with the video occurred after the arrest.

79.    The tape would have directly contradicted, Grady's, Foley and Fifield's version of events.

80.    Defendants Fifield, Winn and/or US Security were responsible for preserving the videotape evidence but they failed to do so.

81.    On or about May 8, 2003 Herrera Betancourt complained through his counsel to the WPD internal affairs unit about the conduct of the WPD officers that came in contact with him.

82.    On May 20, 2003, Former Chief of Police James M. Gallagher advised plaintiff's counsel by letter that an investigation had begun into the allegations of Herrera Betancourt.

83.    On August 25, 2003 Former Chief of Police James Gallagher advised in writing the Law department of the City of Worcester that they had not obtained any statements from percipient witnesses to the incident, including those of defendants Grady, Foley and Fifield, because pursuant to WPD policy: "A starting point of all complaint investigations, especially those filed by a third party, is for the Internal Affairs Division to request an interview with the complainant."

84.    At all times material to this complaint the City of Worcester and the WPD had a policy of failing to conduct thorough and impartial investigations of citizen complaints of abuse at the hands of WPD officers.

85.    On December 16, 2004, the criminal trial of Herrera Betancourt for three counts of assault with a dangerous was held in Worcester District Court and on that date Herrera Betancourt was found not guilty of all charges by a District Court judge.

86.    At all times material to this complaint the City of Worcester had a policy and practice of not starting or completing internal affairs investigations brought by citizens against police officers until the conclusion of criminal charges.

87.    At all times material to this complaint the City of Worcester had a policy and practice of not sanctioning or disciplining officers who were alleged to have abused citizens.

88.    At all times material to this complaint the City of Worcester had a policy and practice of not sanctioning or disciplining officers who were found by state or federal court to have abused citizens.

89.    On January 23, 2004, counsel for Herrera Betancourt was notified by Sgt. Michael Kwederis from the WPD internal affairs unit that the complaint had been re-assigned to him.

90.   On or about May 12, 2004, in a letter erroneously dated May 20, 2003, defendant Chief Vizzo notified counsel for Herrera Betancourt that the department had investigated the claim and the complaint "[was] unsustained, i.e. there is insufficient evidence to either prove or disprove its allegations."

91.   On that same day City Manager Michael R. O'Brien accepted and agreed with the finding made by Chief of Police Vizzo that there was insufficient evidence to either prove or disprove Herrera Betancourt's allegations.

92.   Neither Chief Vizzo nor City Manager O'Brien recommended any disciplinary action against Grady or Foley or against any other officer who came in contact with Herrera Betancourt.

93.   On September 2, 2004 counsel for the plaintiff gave notice and presentment under Massachusetts G.L. c. 258, the Massachusetts Torts Claims Act, of Herrera Betancourt's state law claims herein to the City Manager O'Brien by via certified mail, return receipt requested.

94.   Herrera Betancourt's notice and presentment letter put on notice City Manager O'Brien as Chief policy maker for the City of Worcester that the WPD had engaged in a pattern and practice of failing to "properly hire, retain, dismiss, supervise, discipline officers, or to train them in basic areas of law enforcement, thereby fostering a climate of impunity that encourage officers to abuse persons in their custody without the fear of repercussions."

95.   City Manager O'Brien was also provided with information of other citizen complaints against the WPD both in state and federal courts as well as evidence suggesting that numerous citizen complaints did not appear to have been investigated at all by the WPD internal affairs department.

96.   On September 3, 2004, City Manager O'Brien responded to the plaintiff's notice and presentment letter advising he had copied the letter to the City of Worcester Law Department and that a representative of the Law Department would be in contact with Herrera Betancourt's counsel.

97.   As of the date of this Complaint, neither the City of Worcester Law Department nor any other representative of the City have contacted plaintiff's counsel regarding this matter, and there has been no settlement or offer of settlement made in connection with the state law claims herein.

98.   City Manager O'Brien acting on behalf of defendant City of Worcester was indifferent to the allegations made by the plaintiff in his letter of notice and presentment and did not reopen an investigation into the allegations and complaint of Herrera Betancourt.

**Damages**

99.    The plaintiff was subjected to violence and excessive force by defendants Grady, Foley and Fifield, and they thereby caused him to sustain injuries to his brain, face, mouth, thumb and other parts of his body.

100.    Grady, Foley and Fifield each used excessive force, and each countenanced and deliberately failed to restrain the use of excessive force by the other two, and thereby they individually and collectively caused pain and physical injury to Herrera Betancourt as alleged herein.

101.    As a result of the injuries he sustained as alleged herein Herrera Betancourt incurred reasonable and necessary medical expenses in the amount of $11,662.44.

102.    As a result of the incident, plaintiff endured physical pain and suffering as well as humiliation and embarrassment during and after the incident.

**COUNT I: 42 U.S.C. § 1983, FOURTH & FOURTEENTH AMENDMENTS**
**Grady, Foley, Fifield**

103.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein.

104.    Defendants Grady, Foley, Fifield, acting jointly used unreasonable and unnecessary force on Herrera Betancourt and seized him without probable cause.

105.    By the same actions described above, the defendants Grady, Foley and Fifield deprived Herrera Betancourt of clearly established and well settled rights under the Constitution of the United States including the rights under the Fourth and Fourteenth Amendments.

106.    The defendants acted with reckless disregard for the plaintiffs' constitutional rights.

107.    The defendants acted recklessly and maliciously by conspiring and doctoring official reports to cover their misconduct.

108.    The defendants acted with reckless and/or malicious disregard Herrera Betancourt's need for medical attention.

109.    As a direct and proximate result of the conduct, Herrera Betancourt suffered the injuries described above.

## COUNT II: 42 U.S.C. § 1983 FOURTH AMENDMENT & FOURTEENTH AMENDMENTS
### Keyes

110.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein.

111.    Defendant Keyes was deliberately indifferent to Herrera Betancourt's need for medical attention notwithstanding that the plaintiff gave prompt notice of his injuries to Keyes upon arriving at the WPD service division and notwithstanding that the plaintiff had obviously sustained blunt force trauma to the head as well as other parts of this body.

112.    By the same actions described above, Keyes deprived Herrera Betancourt of clearly established and well settled rights under the Constitution of the United States including the rights under the Fourth and Fourteenth Amendments.

113.    The defendant Keyes acted with reckless disregard for the plaintiff's constitutional rights.

114.    The defendant acted with reckless disregard to Herrera Betancourt's need for medical attention.

115.    As a direct and proximate result of the conduct, Herrera Betancourt endured needless pain and suffering.

## COUNT III: MASSACHUSETTS CIVIL RIGHTS ACT, M.G.L. c. 112 § 11IM
### Grady, Foley, Fifield

116.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

117.    Defendants Grady, Foley and Fifield, individually and jointly, deprived Herrera Betancourt of his rights under federal and state law by threats, intimidation and coercion, thereby violating the Massachusetts Civil Rights Act.

118.    As a direct and proximate result of the aforesaid unlawful conduct, Herrera Betancourt suffered the injuries described herein.

## COUNT IV: ASSAULT AND BATTERY
### Grady, Foley, Fifield

119.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein.

120.    Defendants Grady, Foley and Fifield committed the common law torts of assault and battery against the plaintiff, Betancourt Herrera.

121.    As a direct and proximate result thereof, Betancourt Herrera suffered the injuries as described herein.

## COUNT V: FALSE IMPRISONMENT
### Grady, Foley, Fifield

122.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

123.    Defendants Grady, Foley and Fifield arrested Betancourt Herrera without probable cause and caused his confinement.

124.    Defendants Grady and Foley and Fifield committed the tort of false imprisonment.

125.    Defendants Grady, Foley and Fifield did not have probable cause to arrest Herrera Betancourt.

126.    As a direct and proximate result, Herrera Betancourt suffered the injuries as described above and was unlawfully deprived of his liberty.

## COUNT VI: MALICIOUS PROSECUTION
### Grady, Foley, Fifield

127.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

128.    Defendants Grady and Foley and Fifield caused criminal proceedings to be instituted against Herrera Betancourt without probable cause and with malice as defined in state tort law.

129.    As a direct and proximate result of this conduct, Herrera Betancourt was subjected to malicious prosecution, coercion and intimidation and incurred legal expenses for his defense.

## COUNT VII: 42 U.S.C. § 1983, FOURTH AND FOURTEENTH AMENDMENTS
### City of Worcester

130.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

131.    The City maintained a policy and/or custom of deliberate indifference to proper supervision, training, discipline and retention of police officers and a policy and/or custom of deliberate indifference to the safety of citizens and persons in custody of the WPD in failing to discipline its officers for the excessive use of force. As a result of this policy or custom, police officers in the City of Worcester, including the named individual defendants herein, knew that the use of unnecessary violence and excessive use of force would likely go unnoticed and/or unpunished.

132.    The City acted with deliberate indifference to the constitutional rights of citizens and other persons, including the plaintiff, by failing to take adequate steps to supervise and train its officers and to deter them from the use of excessive force.

133.    The City acted with deliberate indifference to the constitutional rights of persons in custody of the WPD as a result of deliberate indifference to the medical needs of prisoners, including the plaintiff.

134.    The City acted with deliberate indifference to the constitutional rights of persons injured due to misconduct of WPD officers by failing to adequately investigate complaints of excessive force filed with the WPD internal affairs division.

135.    The policies and customs of the City of Worcester were the moving force behind the acts of the individually named police defendants and were the cause of the plaintiff's injuries.

## COUNT VIII: M.G.L. 12, § 11I
### Winn  and Officers

136.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

137.    On September 8, 2002, defendant Winn was doing business with and/or was the agent or servant of Matheson's Apartments and/or the Wellington Company, and employed defendant Grady, an off duty WPD officer, and/or defendant Fifield another police officer, for a private security detail at 714 Main Street, Worcester.

138.    On September 8, 2002, defendant Grady was wearing a WPD uniform and badge, and he was armed with his WPD issued gun.

139.    Winn paid for defendant Grady's services at the aforesaid time and place.

140.    Winn hired defendant Grady, an instrument of the Commonwealth's power, as a detail officer to serve its business interest at 714 Main Street, Worcester, MA.

141.    Defendant Grady worked under the supervision of Winn at 714 Main Street, Worcester, MA on September 8, 2002.

142.    Defendant Grady was working as an employee, agent or servant of Winn on the premises it managed for its private purpose. He was under the command of a superior officer.

143.    Defendant Grady was acting within the scope of his employment as a detail officer for Winn at 714 Main Street, Worcester, MA, and was implicitly authorized by Winn to use force in appropriate situations at all times pertinent to this complaint.

144.    Grady's conduct deprived Herrera Betancourt of his rights under federal and state law by threats, intimidation, coercion, assault and battery, and false imprisonment, thereby violating the Massachusetts Civil Rights Act.

145.    As a private employer, Winn is vicariously liable for the acts of its agent, defendant Grady.

146.    As a direct and proximate result of this conduct, Herrera Betancourt suffered the injuries described above.

147.    On September 8, 2002, defendant Fifield was wearing a police uniform and badge, and he was armed with a gun.

148.    Winn paid for defendant Fifield's services at the aforesaid time and place.

149.    Winn hired defendant Fifield, an instrument of the state's power, as a detail officer to serve its business interest at 714 Main Street, Worcester, MA.

150.    Defendant Fifield worked under the supervision of Winn at 714 Main Street, Worcester, MA on September 8, 2002 and at all times pertinent hereto acted as Winn's agent, servant or employee.

151.    Defendant Fifield was working as an employee of Winn on the premises it managed for its private purpose. He was under the command of a superior officer.

152.    Defendant Fifield was acting within the scope of his employment as a detail officer for Winn t at 714 Main Street, Worcester, MA, and was implicitly authorized by the principal to use force in appropriate situations at all times alleged in this complaint.

153.    Defendant Fifield's conduct deprived Herrera Betancourt of his rights under federal and state law by threats, intimidation, coercion, assault and battery, and false imprisonment, thereby violating the Massachusetts Civil Rights Act.

154.    As a private employer, Winn is vicariously liable for the acts of its agent, defendant Fifield.

155.    As a direct and proximate result of this conduct, Herrera Betancourt suffered the injuries described herein.

### COUNT IX 42: U.S.C. § 1983, FOURTH AND FOURTEENTH AMENDMENTS
### U.S. Security Associates and Officers

156.  The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein.

157.  By the actions described above the defendant U.S. Security Associates and its officers, acting under color of law and in conjunction with the other defendant police officers, deprived the plaintiff of his right to be free from excessive force and unlawful arrest, all in violation of 42 U.S.C. §§ 1983, 1988.

### COUNT X: M.G.L. 12, § 11I
### U.S. Security Associates and Officers

158.  The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

159.  On September 8, 2002, defendant US Security was doing business with Winn and employed defendant Fifield a police officer, for a private security detail at 714 Main Street, Worcester.

160.  On September 8, 2002, defendant Fifield was wearing a police uniform and badge, and he was armed with a gun.

161.  US Security in whole, in part or in combination with Winn paid for defendant Fifield's time.

162.  US Security in whole in part or in combination with Winn hired defendant Fifield, an instrument of the state's power, as a detail officer to serve its business interest at 714 Main Street, Worcester, MA.

163.  Defendant Fifield worked under the supervision of US Security and/or Winn at 714 Main Street, Worcester, MA on September 8, 2002.

164.  Defendant Fifield was working as an employee of US Security and/or Winn on the premises it managed for its private purpose. He was under the command of a superior officer.

165.  Defendant Fifield was acting within the scope of his employment as a detail officer for US Security and/or Winn at 714 Main Street, Worcester, MA, and was implicitly authorized by the principal to use force in appropriate situations at all times alleged in this complaint.

166.  Defendant Fifield's conduct deprived Herrera Betancourt of his rights under federal and state law by threats, intimidation, and coercion thereby violating the Massachusetts Civil Rights Act.

167.    As a private employer, US Security and/or Winn is/are vicariously liable for the acts of its agent, defendant Fifield.

168.    As a direct and proximate result of this conduct, Herrera Betancourt suffered the injuries described above.

## COUNT XI: NEGLIGENCE
### Winn and Officers

169.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

170.    Defendants Grady and Fifield were acting within the scope of their employment as detail officers at 714 Main Street, Worcester, Massachusetts.

171.    Defendants Grady and Fifield were acting as "borrowed servants" of the defendant Winn.

172.    Defendants Grady and Fifield were doing business within the scope of their employment at Winn.

173.    Defendants Grady and Fifield negligently used force on Herrera Betancourt.

174.    Employees of Winn  were negligent in (1) failing to properly and adequately supervise defendants Grady and Fifield; and (2) failing to properly train and instruct police officers it hired, such as defendants Grady and Fifield, on how to deal with customers or people it came in contact with at the properties it managed.

175.    As a proximate cause of this negligence, Herrera Betancourt suffered damages as described above.

## COUNT XII: NEGLIGENCE
### U.S. Security Associates and Officers

176.    The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

177.    Defendant Fifield was acting within the scope of their employment as detail officers at 714 Main Street, Worcester, Massachusetts.

178.    Defendant Fifield was acting as "borrowed servants" of the defendant US Security in whole or in combination with Winn.

179.    Defendant Fifield was doing business within the scope of his employment at US Security in whole or in combination with Winn.

180.    Defendant Fifield negligently used force on Herrera Betancourt.

181. Employees of US Security in whole or in combination with Winn were negligent in (1) failing to properly and adequately supervise defendant Fifield; and (2) failing to properly train and instruct police officers it hired, such as defendant Fifield, on how to deal with customers or people it came in contact with at the properties it managed.

182. As a proximate cause of this negligence, Herrera Betancourt suffered damages as described above.

## COUNT XIII: NEGLIGENCE
### City of Worcester

183. The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

184. As stated previously, on or about September 2, 2004 counsel for the plaintiff gave notice and presentment under Massachusetts G.L. c. 258, the Massachusetts Torts Claims Act, via certified mail return receipt requested to the City Manager O'Brien and the Law Department. *See* **Exhibit 2** to original complaint**.**

185. Plaintiff properly performed the conditions precedent to filing an action under M.G.L. c. 258.

186. Defendants Grady, Foley, and Keyes were acting within the scope of their employment at all times material to this complaint.

187. The conduct of the defendants Grady, Foley and Keyes amount to negligence.

188. Employees of the City of Worcester were negligent in failing to: 1) properly and adequately supervise defendants Grady, Foley and Keyes; (2) protect the plaintiff of the use of force by defendants Grady, Foley and Keyes; (3) properly to train and instruct defendants Grady, Foley and Keyes in the use of force, and (5) properly investigate and discipline police officers thereby permitting an encouraging acts of misconduct and impunity against civilians.

189. As a direct and proximate result of the negligence, Betancourt Herrera suffered damages as described above.

## COUNT XIV: SPOLIATION OF EVIDENCE
### Fifield, Winn, U.S. Security Associates

190. The plaintiff incorporates the above paragraphs by reference into this count as if fully set forth herein

191.    By the actions described above the defendants, Fifield, Winn and/or US Security, individually, or jointly destroyed or tampered with a surveillance videotape that upon information and belief contained exculpatory evidence as to the criminal charges against the plaintiff, and thereby prejudiced him and forced him to incur unnecessary expense for his defense.

192.    By their actions as described above the defendants named herein did wrongfully deprive the plaintiff of evidence that would otherwise be available to him to meet his burdens of proof in this action.

WHEREFORE, Betancourt Herrera requests that this Honorable Court:

1.    Award compensatory damages;
2.    Award punitive damages against all defendant police officers;
3.    Award the costs of this action, including reasonable attorney fees, to the plaintiff;
4.    Award such other and further relief as this court may deem necessary and appropriate including imposing sanctions for spoliation of evidence.


Respectfully submitted,
Plaintiff by his attorneys,


*/s/ Robert A. Scott*
Hector E. Pineiro, Esquire, BBO # 555315
Robert A. Scott, Esquire, BBO # 632447
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
Telefax. (508) 770-1300
h.pineiro@att.net

DATED: November 9, 2006


**Certificate of Service**

I, Robert A. Scott, Esq., counsel to the plaintiff, hereby certify that on this date, November 9, 2006, I filed the within document, First Amended Complaint, through the ECF system, and the same will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and there are no non-registered participants.


*/s/ Robert A. Scott*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case: 05CV40154 FDS

| | | |
|---|---|---|
| JOSE HERRERA BETANCOURT, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN J. GRADY, MICHAEL FOLEY, | ) | |
| PAUL KEYS, THE CITY OF WORCESTER | ) | |
| A MUNICIPAL CORPORATION, KEVIN | ) | |
| KEVIN FIFIELD, US SECURITY ASSOCIATES, | ) | |
| INC., & WINN MANAGEMENT, INC., | ) | |
| Defendants | ) | |

**PLAINTIFF'S NOTICE OF FILING FIRST AMENDED COMPLAINT WITH
AGREEMENT OF ADVERSE PARTIES [Fed. R. Civ. P. 15 (a)]**

Now comes the plaintiff and he respectfully submits the attached first amended complaint for

filing pursuant to Fed. R. Civ. P. 15 (a). The written consent of all other parties to the filing of the

first amended complaint is attached hereto. The sole purpose and effect of filing the first amended

complaint is to strike Winn Management, Inc., as a party defendant and replace it with Winn

Managed Properties, LLC.

Because all parties have furnished their written agreement to the filing of the first amended

complaint, as per the fule, it may be filed without leave of Court.

Respectfully submitted,
Plaintiff, by his attorneys,

*/s/ Robert A. Scott*
Robert A. Scott, Esq., BBO # 648740
Hector E. Pineiro, Esq., BBO # 555315
807 Main Street
Worcester, MA 01610
(508) 770-0600

DATED: November 9, 2006

1

**Certificate of Service**

I, Robert A. Scott, Esq., counsel to the plaintiff, hereby certify that on this date, November 9, 2006, I filed the within document, Plaintiff's Notice Of Filing First Amended Complaint With Agreement of Adverse Parties, with attachments, through the ECF system, and the same will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and there are no non-registered participants.


*/s/ Robert A. Scott*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case: 05CV40154 FDS

| | |
|---|---|
| JOSE HERRERA BETANCOURT, | ) |
|      Plaintiff | ) |
| | ) |
|   v. | ) |
| | ) |
| JOHN J. GRADY, MICHAEL FOLEY, | ) |
| PAUL KEYS, THE CITY OF WORCESTER | ) |
| A MUNICIPAL CORPORATION, KEVIN | ) |
| KEVIN FIFIELD, US SECURITY ASSOCIATES, | ) |
| INC., & WINN MANAGEMENT, INC., | ) |
|      Defendants | ) |

**ADVERSE PARTIES' AGREEMENT TO FILING OF  FIRST AMENDED COMPLAINT
[Fed.R.Civ.P. 15 (a)]**

Now Come the defendants John J. Grady, Michael Foley, Paul Keys, The City of

Worcester, Kevin Fifield, and Winn Management Inc., and prospective defendant Winn

Managed Properties, LLC, and by their counsel hereby agree, as per Federal Rule of Civil

Procedure 15 (a), to filing of the first amended complaint solely for the following purpose: to

remove Winn Management, Inc. as a party and to name Winn Managed Properties, LLC, as

defendant in its place.  In agreeing to amendment of the complaint and thereby becoming a party

to this action, Winn Managed Properties does not waive, and expressly reserves, its right to

assert any and all available affirmative defenses.

1

Respectfully submitted,

*/s/ Thomas M. Franco*
Thomas M. Franco, Esq., BBO # 550596
Attorney for Winn Management, Inc.
Attorney for Winn Managed Properties LLC
Long & Leahy
100 Summer Street, 11th Floor
Boston, MA 02110
(617) 439-4777

*/s/ Janet J. McGuiggan*
Janet J. McGuiggan, Esq., BBO # 630013
Attorney for John J. Grady
Attorney for Michael Foley
Attorney for Paul Keyes
Attorney for the City of Worcester
City Hall, Room 301
455 Main Street
Worcester, MA 01608
(508) 799-1161

*/s/ Michael J. Mascis*
Michael J. Mascis, Esq., BBO # 541772
Attorney for U.S. Security Associates, Inc.
Attorney for Kevin Fifield
Law Offices of Jacqueline L. Allen
262 Washington Street, Suite 601
Boston, MA 02108
(617) 878-4624

DATED: November 9, 2006

## Certificate of Service

I, Robert A. Scott, Esq., counsel to the plaintiff, hereby certify that on this date, November 9, 2006, I filed the within document, Adverse Parties' Agreement To Filing Of Plaintiff's First Amended Complaint, through the ECF system and the same will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and there are no non-registered participants.

*/s/ Robert A. Scott*