UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

JOSE HERRERA BETANCOURT   )
             )
    Plaintiff,     )
v.            )   CIVIL ACTION NO. 05-CV40154-FDS
             )
JOHN J. GRADY, MICHAEL FOLEY  )
PAUL KEYES, THE CITY OF    )
WORCESTER - A MUNICIPAL   )
CORPORATION       )
    Defendant    )
_____)

**PLAINTIFF'S PRE-TRIAL MEMORANDUM PURSUANT TO RULE 16.5**

I.  **SUMMARY OF THE EVIDENCE**

   A.  **Plaintiff's Anticipated Evidence**

     1.  **Liability**

Jose Herrera Betancourt ("Herrera Betancourt") expects the evidence to show that on September 8, 2002, at midnight, Officer John J. Grady ("Officer Grady") a veteran Worcester Police officer was working a paid detail assignment for Winn Management Company ("Winn Management") at 714 Main Street, Worcester, MA. Herrera Betancourt was staying at the apartment of his sister - a tenant of Winn Management. Herrera Betancourt started his sister's car, listened to some music, and noticed that the car was improperly parked at Winn Management's private parking lot. Herrera Betancourt observed Kevin Fifield ("Fifield") a private security guard who was employed at Winn Management. Herrera Betancourt noticed Fifield was speaking with two other police officers. Later he learned Fifield was speaking with Officer Grady and with Worcester Police Officer Michael Foley ("Foley"). The evidence will show that Herrera Betancourt attempted to park his sister's car in a marked parking space. The evidence will show that when Herrera Betancourt

attempted to park, Fifield, Officer Grady and Officer Foley began yelling at him at him. The evidence will show that Herrera Betancourt's attention shifted while backing his sister's car, and that he accidentally bumped into a vehicle park behind. The evidence will show that only Betancourt Herrera's sister's car sustained property damage. The evidence will show that the place were the accident occurred was not a public way but a private parking lot. The evidence will show that immediately after the accident, Herrera Betancourt got out of his sister's car to appraise the damage. Officer Foley ran towards Herrera Betancourt along with Officer Grady and private security guard Fifield, and they asked the plaintiff for identification. The evidence will show that Herrera Betancourt provided one of the officers with his identification and advised both officers and Fifield that he was staying at his sisters apartment at 718 Main Street, Apartment 303, Worcester, Massachusetts. The evidence will show Herrera Betancourt knew Fifield before the incident and that Fifield in turn knew Herrera Betancourt, and knew that Herrera Betancourt was staying at his sister's apartment at Winn Management. The evidence will show that Herrera Betancourt was not told he was under arrest nor was he told not move to the car. The evidence will show Herrera Betancourt had not committed any crime. While the two officers checked the information, Herrera Betancourt got back in the driver's seat of the car and tried to move it to a proper parking space. The evidence will show that when Herrera Betancourt reentered the car, the car was facing towards Murray Avenue in Worcester. The evidence will show that when Herrera Betancourt attempted to move the car in order to park it appropriately, Fifield entered the vehicle from one side and removed the keys from the ignition and Officers Grady and Foley removed Herrera Betancourt from the driver's door. Officer Grady and Foley dragged Herrera Betancourt out of the car and they put his hands behind his back applying excessive force and twisting his arms and wrists and slammed him

2

faced down to the pavement. Immediately, Herrera Betancourt lay unresisting on the ground and was helpless with his arms pinned behind his back, and that he was repeatedly and violently punched, kicked and stomped in his upper and mid- back, forehead, face, nose, neck and shoulders. Foley then handcuffed Herrera Betancourt and while doing so deliberately twisted his left thumb into an unatural position, fracturing it and causing excruciating pain. After being handcuffed, Herrera Betancourt lay prone with his face on the pavement. The evidence will show that officer Foley then stepped on Herrera Betancourt's head with his boot - and when Herrera Betancourt tried to look up he was kicked in the head and forehead, and told "put you're fucking head down." The evidence will show that Foley then repeatedly pressed Herrera Betancourt's face into the bituminous type of parking pavement with his shod foot so as to deliberately injure and cause him to experience pain. The evidence will show Herrera Betancourt was then dragged out of the car and lay prone with his right cheek against the pavement and then officer Grady pulled his service weapon and pointed it at Herrera Betancourt's head. At this time the plaintiff was restrained and handcuffed - not resisting or attempting to resist and posed no risk or threat of injury to any person. Officer Foley repeatedly told Herrera Betancourt, "put your fucking head down!" and continued hitting him. Herrera Betancourt was defenseless and was visibly bleeding from the face and ears. Herrera Bentancourt was observed by his sister Fanny Lopez to be covered in blood when he was placed under arrest and transported to the Worcester police department. When Herrera Betancourt's sister asked if the officer had hurt her brother - the plaintiff heard the officers say he had "fallen". When the doors to the prisoner transport vehicle opened, Herrera Betancourt noticed that his sister's car had been moved from the last position he saw it, the front facing Murray Avenue. Upon information and belief, one of the defendants moved the car so that it would be facing the parking lot entrance

of Wellington Street. The evidence will show that both defendants acting jointly and in concert, conspired and moved the car from its original terminal position (i.e. facing Murray Avenue) into such a position as to "sanitize" the scene of the incident, in order to support a false accusation that Herrera Betancourt had tried to run from Mr. Fifield and the two defendant officers with the car as they approached them from Wellington Street.. The evidence will show both defendants acted jointly or with the assistance of a third party and moved the car six (6) or eight (8) parking spaces in order to falsely and maliciously charge Herrera Beancourt with three felony counts: assault with a dangerous weapon (a car).  Moreover, the evidence will show that  while Herrera Betancourt had visible injuries, neither Grady nor Foley made any efforts to call an ambulance to assist Herrera Betancourt as a result of his encounter with them.  Moreover, Grady used a radio channel, not subject to tape recording on the Worcester Police Department radio frequencies, to contact his immediate supervisor, Lt. Richard Krasinskas who then came to the scene of the beating.

After his arrest Herrera Betancourt was transported to the service division or to the lock up of the Worcester police department for booking.  Worcester police regulations and state law required police departments to provide prompt medical attention to injured prisoners. When the plaintiff was booked in front of booking officer, and defendant Paul Keyes ("Keyes"), he asked Herrera Betancourt: "How'd you receive those injuries?"  "You sick or injured"? "How that happened?", to which the plaintiff replied: "How'd that happen? and replied by pointing in one direction and saying "This guy, you know."  Immediately after that, the plaintiff told Keyes "Wow, my finger, See this?".  Another police officer in the booking room, officer S. Pignataro, told Keyes that Herrera Betancourt was injured - and despite the duty to provide prompt medical care, Keyes made no further efforts the investigate the plaintiff's injuries although he knew he was injured, because he

was asked to wipe his blood from his face with paper towel before his booking or "mug shot".

All defendant officers that came in contact with Herrera Betancourt were deliberately indifferent to his medical needs. Herrera Betancourt was bailed and went to the hospital on his own and diagnosed on September 8, 2002 by UMass. Radiologist Jacqueline Wellman, M.D., with ". . . [a] tiny subdural hematoma in the right frontal region [of the brain]", and a left thumb metacarpal base fracture which had to be surgically repaired by Umass. Orthopaedist -hand specialist Dr. Lance G. Warhold on September 18, 2002.  Herrera Betancourt was charged and prosecuted for a serious crime despite the fact that the defendants who charged him with crimes knew that the charges against him were trumped. In May 2003, Herrera Betancourt complained to the Worcester Police Department and its internal affairs division that he had been brutally assaulted by the defendants and wrongfully charged with a crime. The evidence will show that all times material to this complaint and dating back to the early 1980's, the City of Worcester had a policy and or a custom and practice of failing to conduct thorough and impartial police investigations into citizens complaints of abuse on at the hands of WPD officers.

On December 16, 2004, during a criminal bench trial in Worcester District Court  for three (3) counts of assault with a dangerous weapon Herrera Betancourt was found not guilty of all charges by a District Court judge. A witness, Jaime Madera testified that he observed the officers beat Herrera Betancourt and that in fear for his own safety he ran away from the scene.

 Moreover, the evidence will show that the City of Worcester had a policy and practice of not starting or completing investigations of citizen complaints until the resolution of criminal charges against the person involved in the police incident.  At all times pertinent to this case, the City had a policy and or a custom and practice of not sanctioning or disciplining officers who were

5

alleged to have engaged in serious abuse of its citizenry. At all times material to this complaint, the City of Worcester had absolute knowledge that Officer Grady was a troubled officer who had accumulated numerous citizen and disciplinary complaints alleging serious allegations of police abuse. Despite knowing of Grady's propensity for violence and insubordination, the City allowed him to come in contact with the citizenry of Worcester.

At all times material to this Complaint, the City had an unconstitutional use of force policy that allowed officers including the defendants in this case to use excessive and unconstitutional levels of force without having to specifically report or account for what level of force they used in the field. Before this incident the City of Worcester, as a result of numerous lawsuits, became aware of many deficiencies it had in basic areas of law enforcement, including but not limited to deficiencies with its use of force policy, failure to comply with the law relative to the handling of injured prisoner reports, ignoring and failing investigate state and federal complaints that alleged civil right abuses, failing to train or discipline its officers and or to take seriously complaints of abuse. As a result, it created at all times material to this complaint a climate in the department of lawlessness among certain officers and the defendants in this case, allowing officers to believe that they could act with impunity.

After Herrera Betancourt won the criminal trial, the City of Worcester internal affairs department (of the Worcester police) conducted a perfunctory and result-oriented investigation into

the allegations of the plaintiff.  On May 12, 2004, the internal affairs department concluded that Herrera Betancourt's claims were "unsustained, i.e. there is insufficient evidence to either prove or disprove its allegations.").  There was no reason to arrest and prosecute Herrera Betancourt for any crimes as a result of the incident.  As a result of this incident and other similarly situated suits, the City has changed most if not all of policies as to use of force, critical incidents, injured prisoners, investigating alleged incidents of abuse.  That shift in policy evidences that at all times material to this action, the existing policies of Worcester were unconstitutional and did not comply with modern and acceptable standards or best practices.

### 2.    Damages

As a direct and proximate result of Defendant's Officer Foley's and Grady's conduct, Herrera Betancourt sustained contusions of the head and nose and a concussion. In addition, he was diagnosed with a small frontal hematoma in the frontal region of the brain as diagnosed by Dr. Jacqueline Wellman, M.D.  Mr. Herrera Betancourt secondary to the assault suffered from a left thumb metacarpal base fracture which necessitated a surgical procedure to repair it known as a closed reduction and pinning left thumb metacarpal base fracture. Mr. Herrera Betancourt incurred charges of approximately $11,662.44 in medical expenses as a result of this incident. The plaintiff will present testimony from a medical expert with a speciality in neurology who will testify that Mr. Herrera Betancourt suffers from pain in his thumb and left hand which is triggered by the use of the left hand.  Mr. Herrera Betancourt will testify he suffers from headaches which afflict him a number of times a week which occur in the bifrontal are of the head extending all the way to the back of the head.  He also experiences back pain and as a result of the concussion he developed concentration

and memory problems. He also developed dizziness which sometimes occurs independently and sometimes with headaches. Mr. Herrera Betancourt will also testify that he sufferes from intense fear and phobia to police officers and that he has experienced episodes of panic attacks in which he experiences a number of physical symptoms. Mr. Herrera Betancourt has also endured mental suffering as a result of the officers action including but not limited to the unlawful assault and battery, defending himself against serious criminal charges and the filing of this suit.

## II.    FACTS ESTABLISHED BY PLEADINGS, ADMISSIONS, OR STIPULATIONS

1.    Jose Herrera Betancourt was at all times material to this complaint a citizen of Worcester. .

2.    John J. Grady was at all times material to this complaint a police officer for the City of Worcester.

3.    Mr. Grady was acting under color of state law at the time of the incident alleged by the plaintiff.

4.    Mr. Grady was acting within the scope of his employment at all times alleged in the complaint.

5.    Mr. Grady was working a paid detail for Winn Management that day.

6.    Michael Foley was at all times material to this complaint a police officer for the City of Worcester.

7.    Mr. Foley was acting under color of state law at the time of the incident alleged by the plaintiff.

8.    Mr. Foley was acting within the scope of his employment at all times alleged in the complaint.

9.    Mr. Foley was working a paid detail for the Worcester Housing Authority that day.

10.   Paul Keyes was at all times material to this complaint a police officer for the City of Worcester.

11.     Mr. Keyes was acting under color of state law at the time of the incident alleged by the plaintiff.

.

12.     Mr. Keyes was acting within the scope of his employment at all times alleged in the complaint.

13.     Mr. Keyes was working in the cell room of the Worcester police department and was the officer in charge of Mr. Herrera Betancourt's booking.

14.     Mr. Herrera Betancourt was involved in an accident in private driveway which called the attention of two Worcester Police officers and a private security guard.

15.     Mr. Herrera Betancourt provided the officers with his identification.

16.     Mr. Herrera Betancourt was not told he was under arrest.

17.     Mr. Herrera Betancourt was violently beaten and placed under arrest.

18.     The defendants fabricated a story about Mr. Herrera Betancourt's actions and falsely charged him with a serious crime in order to hide their abusive and unconstitutional conduct.

19.     Mr. Herrera Betancourt was fully exonerated from the false accusations by a Massachusetts District Court Judge.


III.    **CONTESTED ISSUES OF FACT**

1.      Did Defendant Grady intentionally, maliciously, and or recklessly strike Mr. Herrera Betancourt?
2.      Was the force used by Mr. Grady on Mr. Herrera Betancourt unreasonable?
3.      Did Defendant Grady intentionally or recklessly lied in an official and sanitize the scene of the incident to support a false accusation that Mr. Herrera Betancourt had assaulted them with a dangerous weapon?
4.      Was Grady deliberately indifferent to the medical needs of Mr. Herrera Betancourt?

5.      Did Defendant Foley intentionally and or recklessly strike Mr. Herrera Betancourt?
6.      Was the force used by Mr. Grady on Mr. Herrera Betancourt unreasonable?
7.      Did Defendant Foley intentionally, or recklessly lied in an official and sanitize the scene of the incident to support a false accusation that Mr. Herrera Betancourt had assaulted them with a dangerous weapon?
8.      Was Foley deliberately indifferent to the medical needs of Mr. Herrera Betancourt?
9.      Was Mr. Keyes deliberately indifferent to the medical needs of Mr. Herrera Betancourt?
10.     What injuries, if any, did Mr. Herrera Betancourt suffer as a result of this incident?

11.     Were the actions of the defendants officers and the City the moving behind the alleged violation to Mr. Herrera Betancourt's constitutional rights.

12.     What amount of damages, if any, is necessary to compensate Mr. Herrera Betancourt for any injuries suffered by him?

13.     What amount of punitive damages, if any, should be assessed against Mr. Grady?

14.     What amount of punitive damages, if any, should be assessed against Mr. Foley?

15.     What amount of punitive damages, if any, should be assessed against Mr. Keyes?

## IV.    JURISDICTIONAL QUESTIONS

There are no jurisdictional issues that plaintiff is aware of.

## V.    QUESTIONS RAISED BY PENDING MOTIONS

There are no pending motions.

## VI.    ISSUES OF LAW

### A.    Contested Legal Issues

1.     Did Mr. Grady's conduct violate Mr. Herrera Betancourt's civil rights?

2.     Did Mr. Foley's conduct violate Mr. Herrera Betancourt's civil rights?

3.     Did Mr. Keyes' conduct violate Mr. Herrera Betancourt's civil rights?

4.     Did the City of Worcester's conduct violate Mr. Herrera Betancourt's civil rights?

### B.    Motions in Limine

1.  Defendant expects to file a motion in limine to preclude any questions or exhibits related to his personnel file and any state police investigation into this incident.

## VII.    REQUESTED AMENDMENTS TO THE PLEADINGS

No amendments have been requested.

## VIII.    ADDITIONAL MATTERS TO AID IN DISPOSITION OF THIS ACTION

There are no additional pending matters.

## IX.    PROBABLE LENGTH OF TRIAL

The trial by a jury is expected to take 7 days[1].

X.    **NAMES AND ADDRESSES OF WITNESSES**
    For convenience the witnesses are listed by the party who is expected to call the witness. The parties reserve the right to call any listed witness. This list does not include any witnesses who will only be called as rebuttal witnesses.

    A.    **Plaintiff's Factual Witnesses**

1.    Plaintiff Jose Herrera Betancourt of 55 Phillips Street Putnam, Connecticut, Massachusetts, Tel. (774) 289-4500..

2.    Fannye V. Herrera, 55 Phillips Street, Putnam, Connecticut, 860 963-7225.

3.    Former Worcester Police Officer, John J. Grady formerly of 9-11 Lincoln Street, Worcester, Massachusetts.

4.    Mr. Paul Keyes, a Worcester Police Officer, with a usual work address at 9-11 Lincoln Street Worcester, Massachusetts.

5.    Mr. Michael Foley, a Worcester Police Officer, with a usual work address at 9-11 Lincoln Street Worcester, Massachusetts.

6.    Kevin Fifield, 23 Propsect Avenue, Dudley, Massachusetts.

7.    Worcester Police Officer S. Pignataro, Worcester Police Department, 9-11 Lincoln Street Worcester, MA.

8.    Lieutenant Richard Karzcinskas, Worcester Police Department, 9-11 Lincoln Street, Worcester, Massachusetts.

9.    Chief of Police Gary Gemme, City of Worcester, Worcester Police Department, 9-11 Lincoln Street, Worcester, Massachusetts.

10.    Former Chief of Police Edward P. Gardella, Jr.of 370 Sunderland Road or 5 Russel Calvin

---

[1]Both plaintiff's counsel have also been scheduled to start a one to two week medical malpractice case in Middlesex Superior Court on the same day. Dennis Yeaw, Esquire, Administrator of the Estate of Alexis Santana v. Brian McNeil, LCSW, Marjorie Pierce, LCSW, Serge Botsaris, M.D., The Boston Road Clinic, Inc. II, and its successor, Spectrum Health Systems, Inc. Paul Lemieux, Ph.D and AdCare Hospital of Worcester, Inc. MICV 2004-03061 and will probably need a dispensation from the U.S. District Court or a continuance of the state trial action.

Drive, Worcester, Massachusetts, Tel. (508) 856-0776..

11.    Leo F. Polizotti, PhD., Directd Decision Institute, 45 Linden Street, Suite 3, Worcester, Massachusetts, Tel. (508) 798-2399.

12.    Ronal C. Madnick, Area Director American Civil Liberties Union of Massachusetts 340 Main Street, Worcester, Massachusetts.

13.    Former Deputy Chief of Police Harold McCrae, (Retired) City of Worcester Police Department of Worcester, Massachusetts.

14.    The Honorable Michael R. O'Brien, City Manager for the City of Worcester, City Hall Plaza, 455 Main Street, Worcester, Massachusetts.

15.    Captain John R. Harrington, Commanding officer of the Worcester Police Internal Affairs unit, 9-11 Lincoln Street, Worcester, Massachusetts.

16.    Sgt. Michael J. Kwederis, Worcester Police Department, Internal Affairs Unit, 9-11 Lincoln Street, Worcester, Massachusetts.

17..    Former Chief of Police Gerald J. Vizzo, (Retired) 11 Bailin Drive, Worcester, Massachusetts.

18.    Jacqueline L. Wellman, M.D. of 67 Coolidge Road, Northborough, MA and/or with a business address at Milford Radiology, 14 Prospect Street, Milford, MA 01757.

19.    Lance G. Warhold, M.D. Lincoln Street, 281 Lincoln Street, Worcester, MA 01605.

20.    Jean-Guillaime H. Rock, D.O. Health Alliance Hospital, Leominster, Massachusetts.

21.    Charles A. Evangelista of 253 Massachusetts Avenue, or 80 Weaver Drive,  Massapequa, NY.

22.    Shawn W. Wilder of 11 Dominion Road, Worcester, Massachusetts.

23.    Daniel Houde, 121 Worcester Street, North Grafton, Massachusetts.

24.    Joseph F. Consolo, 2 Lower Winbrook Drive Ext. Auburn, Massachusetts.

25.    Jaime Madera formerly of 714 Main Street, Worcester, MA.

26.    Leon A. King, II, Esquire Commissioner of Prisons, City of Philadelphia, Philadelphia Prison Systems, 7901 State Road, Philadelphia, PA 19136-3407, Tel. (215) 685-8201.

27.     Plaintiff has various additional witnesses that he will provide to the City of Worcester involving citizens who complained about the conduct of one of the officers involved in the arrest of Herrera Betancourt[2].

 

 

### B.     Plaintiff's Medical Witness

1.     Dr. Norberto Alvarez, M.D., FAAPN, Children's Hospital, Department of Neurology, Assistant in Neurology, Assistant Professor Harvard Medical School, 300 Longwood Avenue, Boston, MA. Doctor Alvarez is a Board Certified Neurologist from the American Board of Neurology and Psychiatry., Board Certified in Electroencephalography by the American Board of Electroencephalography.. He will testify that he graduated from College No. 1 of Buenos Aires and that he got a medical degree from the University of Buenos Aires. That he trained at Children's Hospital in Buenos Aires for a Pediatrics Residency. He also trained in Pediatric Neurology at Wayne State University Detroit, Michigan. That he has trained as a Fellow in Child Neurology at Children's Hospital , Michigan and as a Fellow in Epilepsy and Electroencephalography at Children's Hospital ,Boston, Harvard Medical School. That he was a Fellow in Psychiatry at Children's Hospital  Medical Center in Boston.  Iarrobino graduated from New England College of Osteopathic Medicine in 1991. He is affiliated with Children's Hospital in Boston and is the Medical Director of the Wrentham Developmental Center in Wrentham, Massachusetts. To a reasonable degree of medical certainty he will testify that Mr. Herrera Betancourt sustained a concussion on 9/8/02 as a consequence of the physical attack that he was subjected to that day. That he presents signs and symptoms consistent with the post concussive syndrome, nameley, headaches, dizzines, impairment of cognitive functions, mostly poor memory and concentration, back pain all as a consequence of the incident on 9/8/02. He will also testify that the pain and soreness, weakness, muscle hypotrophy in the thenar eminence, the smaller size of the thumb as well as subluxation that the plaintiff presents in the left thumb are the consequence of the fracture and other injuries that he sustained on 9/8/02.

2.

### C.     Defendant's Factual Witnesses

Defendant's witnesses:

1.     Plaintiff has not received a witness list from the defendant.

## XI.     PROPOSED EXHIBITS

### A.     Agreed Upon Exhibits

---

[2]Plaintiff will communicate this information privately to the City of Worcester because it understands that disclosure of the names of those complaining witnesses is subject to a court ordered confidentiality agreement.

Plaintiff will supplement his response to this question after consultation with the defendant's counsel.

**B.** **Contested Exhibits**

Plaintiff will supplement his response to this question after consultation with the defendant's counsel.

**XII.** **APPENDIX WITH PROPOSED JURY INSTRUCTIONS**

Each party will separately file proposed jury instructions.

**XI.** **PROPOSED VOIR DIRE OF THE JURY PANEL AND PROPOSED SPECIAL VERDICT FORMS**

Each party will separately file proposed voir dire and special verdict forms.

RESPECTFULLY SUBMITTED,                    RESPECTFULLY SUBMITTED,

Plaintiff Jose Herrera Betancourt,              Defendants John J. Grady, et al
By his attorneys:                                        By his attorneys:

_____                    _____
Hector E. Pineiro                                       Janet McGuiggan
BBO #555315                                           BBO # 424920
Robert Scott                                             City of Worcester **Law Dept.**
BBO #645099                                           455 Main Street
807 Main Street                                         Worcester, MA 016108
(508 770-0600                                           Tel. (508) 770-0600

CERTIFICATE OF SERVICE

I, Hector E. Pineiro, hereby certify that on this 12th day of March 2008, I served the within document upon all parties of record through electronic filing to all registered participants.

_____
Hector E. Pineiro

14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
JOSE HERRERA BETANCOURT                 )
                                        )
            Plaintiff,                  )
v.                                      )        CIVIL ACTION NO. 05-CV40154-FDS
                                        )
JOHN J. GRADY, MICHAEL FOLEY            )
PAUL KEYES, THE CITY OF                 )
WORCESTER - A MUNICIPAL                 )
CORPORATION                             )
            Defendant                   )
_____)

**PLAINTIFF'S PRE-TRIAL MEMORANDUM PURSUANT TO RULE 16.5**

I.    **SUMMARY OF THE EVIDENCE**

      A.    **Plaintiff's Anticipated Evidence**

            1.    **Liability**

Jose Herrera Betancourt ("Herrera Betancourt") expects the evidence to show that on September 8, 2002, at midnight, Officer John J. Grady ("Officer Grady") a veteran Worcester Police officer was working a paid detail assignment for Winn Management Company ("Winn Management") at 714 Main Street, Worcester, MA. Herrera Betancourt was staying at the apartment of his sister - a tenant of Winn Management.  Herrera Betancourt started his sister's car, listened to some music, and noticed that the car was improperly parked at Winn Management's private parking lot.  Herrera Betancourt observed Kevin Fifield ("Fifield") a private security guard who was employed at Winn Management. Herrera Betancourt noticed Fifield was speaking with two other police officers.  Later he learned Fifield was speaking with Officer Grady and with Worcester Police Officer Michael Foley ("Foley"). The evidence will show that Herrera Betancourt attempted to park his sister's car in a marked parking space.  The evidence will show that when Herrera Betancourt

attempted to park, Fifield, Officer Grady and Officer Foley began yelling at him at him. The evidence will show that Herrera Betancourt's attention shifted while backing his sister's car, and that he accidentally bumped into a vehicle park behind. The evidence will show that only Betancourt Herrera's sister's car sustained property damage. The evidence will show that the place were the accident occurred was not a public way but a private parking lot. The evidence will show that immediately after the accident, Herrera Betancourt got out of his sister's car to appraise the damage. Officer Foley ran towards Herrera Betancourt along with Officer Grady and private security guard Fifield, and they asked the plaintiff for identification. The evidence will show that Herrera Betancourt provided one of the officers with his identification and advised both officers and Fifield that he was staying at his sisters apartment at 718 Main Street, Apartment 303, Worcester, Massachusetts. The evidence will show Herrera Betancourt knew Fifield before the incident and that Fifield in turn knew Herrera Betancourt, and knew that Herrera Betancourt was staying at his sister's apartment at Winn Management. The evidence will show that Herrera Betancourt was not told he was under arrest nor was he told not move to the car. The evidence will show Herrera Betancourt had not committed any crime. While the two officers checked the information, Herrera Betancourt got back in the driver's seat of the car and tried to move it to a proper parking space. The evidence will show that when Herrera Betancourt reentered the car, the car was facing towards Murray Avenue in Worcester. The evidence will show that when Herrera Betancourt attempted to move the car in order to park it appropriately, Fifield entered the vehicle from one side and removed the keys from the ignition and Officers Grady and Foley removed Herrera Betancourt from the driver's door. Officer Grady and Foley dragged Herrera Betancourt out of the car and they put his hands behind his back applying excessive force and twisting his arms and wrists and slammed him

2

faced down to the pavement. Immediately, Herrera Betancourt lay unresisting on the ground and was helpless with his arms pinned behind his back, and that he was repeatedly and violently punched, kicked and stomped in his upper and mid- back, forehead, face, nose, neck and shoulders. Foley then handcuffed Herrera Betancourt and while doing so deliberately twisted his left thumb into an unatural position, fracturing it and causing excruciating pain. After being handcuffed, Herrera Betancourt lay prone with his face on the pavement. The evidence will show that officer Foley then stepped on Herrera Betancourt's head with his boot - and when Herrera Betancourt tried to look up he was kicked in the head and forehead, and told "put you're fucking head down." The evidence will show that Foley then repeatedly pressed Herrera Betancourt's face into the bituminous type of parking pavement with his shod foot so as to deliberately injure and cause him to experience pain. The evidence will show Herrera Betancourt was then dragged out of the car and lay prone with his right cheek against the pavement and then officer Grady pulled his service weapon and pointed it at Herrera Betancourt's head. At this time the plaintiff was restrained and handcuffed - not resisting or attempting to resist and posed no risk or threat of injury to any person. Officer Foley repeatedly told Herrera Betancourt, "put your fucking head down!" and continued hitting him. Herrera Betancourt was defenseless and was visibly bleeding from the face and ears. Herrera Bentancourt was observed by his sister Fanny Lopez to be covered in blood when he was placed under arrest and transported to the Worcester police department. When Herrera Betancourt's sister asked if the officer had hurt her brother - the plaintiff heard the officers say he had "fallen". When the doors to the prisoner transport vehicle opened, Herrera Betancourt noticed that his sister's car had been moved from the last position he saw it, the front facing Murray Avenue. Upon information and belief, one of the defendants moved the car so that it would be facing the parking lot entrance

of Wellington Street. The evidence will show that both defendants acting jointly and in concert, conspired and moved the car from its original terminal position (i.e. facing Murray Avenue) into such a position as to "sanitize" the scene of the incident, in order to support a false accusation that Herrera Betancourt had tried to run from Mr. Fifield and the two defendant officers with the car as they approached them from Wellington Street.. The evidence will show both defendants acted jointly or with the assistance of a third party and moved the car six (6) or eight (8) parking spaces in order to falsely and maliciously charge Herrera Beancourt with three felony counts: assault with a dangerous weapon (a car). Moreover, the evidence will show that while Herrera Betancourt had visible injuries, neither Grady nor Foley made any efforts to call an ambulance to assist Herrera Betancourt as a result of his encounter with them. Moreover, Grady used a radio channel, not subject to tape recording on the Worcester Police Department radio frequencies, to contact his immediate supervisor, Lt. Richard Krasinskas who then came to the scene of the beating.

After his arrest Herrera Betancourt was transported to the service division or to the lock up of the Worcester police department for booking. Worcester police regulations and state law required police departments to provide prompt medical attention to injured prisoners. When the plaintiff was booked in front of booking officer, and defendant Paul Keyes ("Keyes"), he asked Herrera Betancourt: "How'd you receive those injuries?"  "You sick or injured"? "How that happened?", to which the plaintiff replied: "How'd that happen? and replied by pointing in one direction and saying "This guy, you know." Immediately after that, the plaintiff told Keyes "Wow, my finger, See this?". Another police officer in the booking room, officer S. Pignataro, told Keyes that Herrera Betancourt was injured - and despite the duty to provide prompt medical care, Keyes made no further efforts the investigate the plaintiff's injuries although he knew he was injured, because he

was asked to wipe his blood from his face with paper towel before his booking or "mug shot".

All defendant officers that came in contact with Herrera Betancourt were deliberately indifferent to his medical needs. Herrera Betancourt was bailed and went to the hospital on his own and diagnosed on September 8, 2002 by UMass. Radiologist Jacqueline Wellman, M.D., with ". . . [a] tiny subdural hematoma in the right frontal region [of the brain]", and a left thumb metacarpal base fracture which had to be surgically repaired by Umass. Orthopaedist -hand specialist Dr. Lance G. Warhold on September 18, 2002.  Herrera Betancourt was charged and prosecuted for a serious crime despite the fact that the defendants who charged him with crimes knew that the charges against him were trumped. In May 2003, Herrera Betancourt complained to the Worcester Police Department and its internal affairs division that he had been brutally assaulted by the defendants and wrongfully charged with a crime. The evidence will show that all times material to this complaint and dating back to the early 1980's, the City of Worcester had a policy and or a custom and practice of failing to conduct thorough and impartial police investigations into citizens complaints of abuse on at the hands of WPD officers.

On December 16, 2004, during a criminal bench trial in Worcester District Court  for three (3) counts of assault with a dangerous weapon Herrera Betancourt was found not guilty of all charges by a District Court judge. A witness, Jaime Madera testified that he observed the officers beat Herrera Betancourt and that in fear for his own safety he ran away from the scene.

 Moreover, the evidence will show that the City of Worcester had a policy and practice of not starting or completing investigations of citizen complaints until the resolution of criminal charges against the person involved in the police incident.  At all times pertinent to this case, the City had a policy and or a custom and practice of not sanctioning or disciplining officers who were

5

alleged to have engaged in serious abuse of its citizenry. At all times material to this complaint, the City of Worcester had absolute knowledge that Officer Grady was a troubled officer who had accumulated numerous citizen and disciplinary complaints alleging serious allegations of police abuse. Despite knowing of Grady's propensity for violence and insubordination, the City allowed him to come in contact with the citizenry of Worcester.

At all times material to this Complaint, the City had an unconstitutional use of force policy that allowed officers including the defendants in this case to use excessive and unconstitutional levels of force without having to specifically report or account for what level of force they used in the field. Before this incident the City of Worcester, as a result of numerous lawsuits, became aware of many deficiencies it had in basic areas of law enforcement, including but not limited to deficiencies with its use of force policy, failure to comply with the law relative to the handling of injured prisoner reports, ignoring and failing investigate state and federal complaints that alleged civil right abuses, failing to train or discipline its officers and or to take seriously complaints of abuse. As a result, it created at all times material to this complaint a climate in the department of lawlessness among certain officers and the defendants in this case, allowing officers to believe that they could act with impunity.

After Herrera Betancourt won the criminal trial, the City of Worcester internal affairs department (of the Worcester police) conducted a perfunctory and result-oriented investigation into

the allegations of the plaintiff.  On May 12, 2004, the internal affairs department concluded that Herrera Betancourt's claims were "unsustained, i.e. there is insufficient evidence to either prove or disprove its allegations.").  There was no reason to arrest and prosecute Herrera Betancourt for any crimes as a result of the incident.  As a result of this incident and other similarly situated suits, the City has changed most if not all of policies as to use of force, critical incidents, injured prisoners, investigating alleged incidents of abuse.  That shift in policy evidences that at all times material to this action, the existing policies of Worcester were unconstitutional and did not comply with modern and acceptable standards or best practices.

 

2.     **Damages**

As a direct and proximate result of Defendant's Officer Foley's and Grady's conduct, Herrera Betancourt sustained contusions of the head and nose and a concussion. In addition, he was diagnosed with a small frontal hematoma in the frontal region of the brain as diagnosed by Dr. Jacqueline Wellman, M.D.  Mr. Herrera Betancourt secondary to the assault suffered from a left thumb metacarpal base fracture which necessitated a surgical procedure to repair it known as a closed reduction and pinning left thumb metacarpal base fracture. Mr. Herrera Betancourt incurred charges of approximately $11,662.44 in medical expenses as a result of this incident. The plaintiff will present testimony from a medical expert with a speciality in neurology who will testify that Mr. Herrera Betancourt suffers from pain in his thumb and left hand which is triggered by the use of the left hand.  Mr. Herrera Betancourt will testify he suffers from headaches which afflict him a number of times a week which occur in the bifrontal are of the head extending all the way to the back of the head.  He also experiences back pain and as a result of the concussion he developed concentration

and memory problems. He also developed dizziness which sometimes occurs independently and sometimes with headaches.  Mr. Herrera Betancourt will also testify that he suffers from intense fear and phobia to police officers and that he has experienced episodes of panic attacks in which he experiences a number of physical symptoms. Mr. Herrera Betancourt has also endured mental suffering as a result of the officers action including but not limited to the unlawful assault and battery, defending himself against serious criminal charges and the filing of this suit.


## II.     FACTS ESTABLISHED BY PLEADINGS, ADMISSIONS, OR STIPULATIONS

1.     Jose Herrera Betancourt was at all times material to this complaint a citizen of Worcester.
.
2.     John J. Grady was at all times material to this complaint a police officer for the City of Worcester.

3.     Mr. Grady was acting under color of state law at the time of the incident alleged by the plaintiff.

4.     Mr. Grady was acting within the scope of his employment at all times alleged in the complaint.

5.     Mr. Grady was working a paid detail for Winn Management that day.

6.     Michael Foley was at all times material to this complaint a police officer for the City of Worcester.

7.     Mr. Foley was acting under color of state law at the time of the incident alleged by the plaintiff.

8.     Mr. Foley was acting within the scope of his employment at all times alleged in the complaint.

9.     Mr. Foley was working a paid detail for the Worcester Housing Authority that day.

10.     Paul Keyes was at all times material to this complaint a police officer for the City of Worcester.

11.    Mr. Keyes was acting under color of state law at the time of the incident alleged by the plaintiff.

.

12.    Mr. Keyes was acting within the scope of his employment at all times alleged in the complaint.

13.    Mr. Keyes was working in the cell room of the Worcester police department and was the officer in charge of Mr. Herrera Betancourt's booking.

14.    Mr. Herrera Betancourt was involved in an accident in private driveway which called the attention of two Worcester Police officers and a private security guard.

15.    Mr. Herrera Betancourt provided the officers with his identification.

16.    Mr. Herrera Betancourt was not told he was under arrest.

17.    Mr. Herrera Betancourt was violently beaten and placed under arrest.

18.    The defendants fabricated a story about Mr. Herrera Betancourt's actions and falsely charged him with a serious crime in order to hide their abusive and unconstitutional conduct.

19.    Mr. Herrera Betancourt was fully exonerated from the false accusations by a Massachusetts District Court Judge.


## III.    CONTESTED ISSUES OF FACT

1.    Did Defendant Grady intentionally, maliciously, and or recklessly strike Mr. Herrera Betancourt?
2.    Was the force used by Mr. Grady on Mr. Herrera Betancourt unreasonable?
3.    Did Defendant Grady intentionally or recklessly lied in an official and sanitize the scene of the incident to support a false accusation that Mr. Herrera Betancourt had assaulted them with a dangerous weapon?
4.    Was Grady deliberately indifferent to the medical needs of Mr. Herrera Betancourt?

5.    Did Defendant Foley intentionally and or recklessly strike Mr. Herrera Betancourt?
6.    Was the force used by Mr. Grady on Mr. Herrera Betancourt unreasonable?
7.    Did Defendant Foley intentionally, or recklessly lied in an official and sanitize the scene of the incident to support a false accusation that Mr. Herrera Betancourt had assaulted them with a dangerous weapon?
8.    Was Foley deliberately indifferent to the medical needs of Mr. Herrera Betancourt?
9.    Was Mr. Keyes deliberately indifferent to the medical needs of Mr. Herrera Betancourt?
10.    What injuries, if any, did Mr. Herrera Betancourt suffer as a result of this incident?

11.     Were the actions of the defendants officers and the City the moving behind the alleged violation to Mr. Herrera Betancourt's constitutional rights.

12.     What amount of damages, if any, is necessary to compensate Mr. Herrera Betancourt for any injuries suffered by him?

13.     What amount of punitive damages, if any, should be assessed against Mr. Grady?

14.     What amount of punitive damages, if any, should be assessed against Mr. Foley?

15.     What amount of punitive damages, if any, should be assessed against Mr. Keyes?


## IV.    <u>JURISDICTIONAL QUESTIONS</u>

There are no jurisdictional issues that plaintiff is aware of.

## V.    <u>QUESTIONS RAISED BY PENDING MOTIONS</u>

There are no pending motions.

## VI.    <u>ISSUES OF LAW</u>

### A.    <u>Contested Legal Issues</u>

1.     Did Mr. Grady's conduct violate Mr. Herrera Betancourt's civil rights?

2.     Did Mr. Foley's conduct violate Mr. Herrera Betancourt's civil rights?

3.     Did Mr. Keyes' conduct violate Mr. Herrera Betancourt's civil rights?

4.     Did the City of Worcester's conduct violate Mr. Herrera Betancourt's civil rights?

### B.    <u>Motions in Limine</u>

1.  Defendant expects to file a motion in limine to preclude any questions or exhibits related to his personnel file and any state police investigation into this incident.

## VII.    <u>REQUESTED AMENDMENTS TO THE PLEADINGS</u>

No amendments have been requested.

## VIII.    <u>ADDITIONAL MATTERS TO AID IN DISPOSITION OF THIS ACTION</u>

There are no additional pending matters.

## IX.    <u>PROBABLE LENGTH OF TRIAL</u>

The trial by a jury is expected to take 7 days[1].

## X.     NAMES AND ADDRESSES OF WITNESSES

For convenience the witnesses are listed by the party who is expected to call the witness. The parties reserve the right to call any listed witness. This list does not include any witnesses who will only be called as rebuttal witnesses.

### A.     Plaintiff's Factual Witnesses

1.     Plaintiff Jose Herrera Betancourt of 55 Phillips Street Putnam, Connecticut, Massachusetts, Tel. (774) 289-4500..

2.     Fannye V. Herrera, 55 Phillips Street, Putnam, Connecticut, 860 963-7225.

3.     Former Worcester Police Officer, John J. Grady formerly of 9-11 Lincoln Street, Worcester, Massachusetts.

4.     Mr. Paul Keyes, a Worcester Police Officer, with a usual work address at 9-11 Lincoln Street Worcester, Massachusetts.

5.     Mr. Michael Foley, a Worcester Police Officer, with a usual work address at 9-11 Lincoln Street Worcester, Massachusetts.

6.     Kevin Fifield, 23 Propsect Avenue, Dudley, Massachusetts.

7.     Worcester Police Officer S. Pignataro, Worcester Police Department, 9-11 Lincoln Street Worcester, MA.

8.     Lieutenant Richard Karzcinskas, Worcester Police Department, 9-11 Lincoln Street, Worcester, Massachusetts.

9.     Chief of Police Gary Gemme, City of Worcester, Worcester Police Department, 9-11 Lincoln Street, Worcester, Massachusetts.

10.     Former Chief of Police Edward P. Gardella, Jr.of 370 Sunderland Road or 5 Russel Calvin

---

[1]Both plaintiff's counsel have also been scheduled to start a one to two week medical malpractice case in Middlesex Superior Court on the same day. Dennis Yeaw, Esquire, Administrator of the Estate of Alexis Santana v. Brian McNeil, LCSW, Marjorie Pierce, LCSW, Serge Botsaris, M.D., The Boston Road Clinic, Inc. II, and its successor, Spectrum Health Systems, Inc. Paul Lemieux, Ph.D and AdCare Hospital of Worcester, Inc. MICV 2004-03061 and will probably need a dispensation from the U.S. District Court or a continuance of the state trial action.

Drive, Worcester, Massachusetts, Tel. (508) 856-0776..

11.    Leo F. Polizotti, PhD., Directd Decision Institute, 45 Linden Street, Suite 3, Worcester, Massachusetts, Tel. (508) 798-2399.

12.    Ronal C. Madnick, Area Director American Civil Liberties Union of Massachusetts 340 Main Street, Worcester, Massachusetts.

13.    Former Deputy Chief of Police Harold McCrae, (Retired) City of Worcester Police Department of Worcester, Massachusetts.

14.    The Honorable Michael R. O'Brien, City Manager for the City of Worcester, City Hall Plaza, 455 Main Street, Worcester, Massachusetts.

15.    Captain John R. Harrington, Commanding officer of the Worcester Police Internal Affairs unit, 9-11 Lincoln Street, Worcester, Massachusetts.

16.    Sgt. Michael J. Kwederis, Worcester Police Department, Internal Affairs Unit, 9-11 Lincoln Street, Worcester, Massachusetts.

17..    Former Chief of Police Gerald J. Vizzo, (Retired) 11 Bailin Drive, Worcester, Massachusetts.

18.    Jacqueline L. Wellman, M.D. of 67 Coolidge Road, Northborough, MA and/or with a business address at Milford Radiology, 14 Prospect Street, Milford, MA 01757.

19.    Lance G. Warhold, M.D. Lincoln Street, 281 Lincoln Street, Worcester, MA 01605.

20.    Jean-Guillaime H. Rock, D.O. Health Alliance Hospital, Leominster, Massachusetts.

21.    Charles A. Evangelista of 253 Massachusetts Avenue, or 80 Weaver Drive,  Massapequa, NY.

22.    Shawn W. Wilder of 11 Dominion Road, Worcester, Massachusetts.

23.    Daniel Houde, 121 Worcester Street, North Grafton, Massachusetts.

24.    Joseph F. Consolo, 2 Lower Winbrook Drive Ext. Auburn, Massachusetts.

25.    Jaime Madera formerly of 714 Main Street, Worcester, MA.

26.    Leon A. King, II, Esquire Commissioner of Prisons, City of Philadelphia, Philadelphia Prison Systems, 7901 State Road, Philadelphia, PA 19136-3407, Tel. (215) 685-8201.

27.     Plaintiff has various additional witnesses that he will provide to the City of Worcester involving citizens who complained about the conduct of one of the officers involved in the arrest of Herrera Betancourt[2].


### B.     Plaintiff's Medical Witness

1.      Dr. Norberto Alvarez, M.D., FAAPN, Children's Hospital, Department of Neurology, Assistant in Neurology, Assistant Professor Harvard Medical School, 300 Longwood Avenue, Boston, MA. Doctor Alvarez is a Board Certified Neurologist from the American Board of Neurology and Psychiatry., Board Certified in Electroencephalography by the American Board of Electroencephalography.. He will testify that he graduated from College No. 1 of Buenos Aires and that he got a medical degree from the University of Buenos Aires. That he trained at Children's Hospital in Buenos Aires for a Pediatrics Residency. He also trained in Pediatric Neurology at Wayne State University Detroit, Michigan. That he has trained as a Fellow in Child Neurology at Children's Hospital , Michigan and as a Fellow in Epilepsy and Electroencephalography at Children's Hospital ,Boston, Harvard Medical School. That he was a Fellow in Psychiatry at Children's Hospital  Medical Center in Boston.  Iarrobino graduated from New England College of Osteopathic Medicine in 1991. He is affiliated with Children's Hospital in Boston and is the Medical Director of the Wrentham Developmental Center in Wrentham, Massachusetts. To a reasonable degree of medical certainty he will testify that Mr. Herrera Betancourt sustained a concussion on 9/8/02 as a consequence of the physical attack that he was subjected to that day. That he presents signs and symptoms consistent with the post concussive syndrome, nameley, headaches, dizzines, impairment of cognitive functions, mostly poor memory and concentration, back pain all as a consequence of the incident on 9/8/02. He will also testify that the pain and soreness, weakness, muscle hypotrophy in the thenar eminence, the smaller size of the thumb as well as subluxation that the plaintiff presents in the left thumb are the consequence of the fracture and other injuries that he sustained on 9/8/02.

2.
### C.     Defendant's Factual Witnesses

Defendant's witnesses:

1.      Plaintiff has not received a witness list from the defendant.

## XI.     PROPOSED EXHIBITS

### A.     Agreed Upon Exhibits

---

[2]Plaintiff will communicate this information privately to the City of Worcester because it understands that disclosure of the names of those complaining witnesses is subject to a court ordered confidentiality agreement.

Plaintiff will supplement his response to this question after consultation with the defendant's counsel.

**B.    Contested Exhibits**

Plaintiff will supplement his response to this question after consultation with the defendant's counsel.

**XII.    APPENDIX WITH PROPOSED JURY INSTRUCTIONS**

Each party will separately file proposed jury instructions.

**XI.    PROPOSED VOIR DIRE OF THE JURY PANEL AND PROPOSED SPECIAL VERDICT FORMS**

Each party will separately file proposed voir dire and special verdict forms.

RESPECTFULLY SUBMITTED,

Plaintiff Jose Herrera Betancourt,
By his attorneys:

/s/ Hector E. Pineiro
_____
Hector E. Pineiro
BBO #555315
Robert Scott
BBO #645099
807 Main Street
(508) 770-0600

CERTIFICATE OF SERVICE

I, Hector E. Pineiro, hereby certify that on this 12th day of March 2008, I served the within document upon all parties of record through electronic filing to all registered participants.

/s/ Hector E. Pineiro
_____
Hector E. Pineiro